1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,            No.  CR 13-402 PA

12               Plaintiff,                COURT'S FINDINGS OF FACT AND
                                           CONCLUSIONS OF LAW RE
13          v.                             DEFENDANT'S MOTION TO DISMISS
                                           FOR PRE-INDICTMENT DELAY
14    THOMAS HIDALGO,

15               Defendant.

16

17          1.     In February of 2009, the Department of Homeland Security Investigations ("HSI")

18    Los Angeles Gang unit began a criminal investigation into a criminal street gang known as  the 18th

19    Street Gang.  HSI's investigation targeted certain "cliques" that operated in and around the South

20    Central area of Los Angeles, California.  During the investigation, HSI used an a confidential

21    informant who is a former member of the gang.

22          2.     Between December 2012 and June 2013, the United States indicted ten targets from

23    this investigation in eight separate indictments.  On June 4, 2013, defendant Thomas Hidalgo

24    ("defendant") was charged in one of those indictments with distribution of cocaine, in violation of

25    21 U.S.C. §§ 841(A)(1), (b)(1)(C), and distribution of methamphetamine in violation of 21 U.S.C.

26    §§ 841(a)(1), (b)(1)(viii).

27          3.     Defendant was charged with selling narcotics in July 2009 and May 2010, to a

28    confidential informant from his business  – "Brown Pride Custom Auto Sounds."  All of the

transactions were monitored by agents with the Department of Homeland Security Investigation ("HSI").  In addition the defendant was intercepted on a consensual wiretap of the CI's phone agreeing to sell drugs.

4.      On July 24, 2013, in an effort to conduct a simultaneous arrest of all indicted gang members, including the defendant, a takedown operation was conducted.  Although several members of the gang were arrested, the defendant was not located.

5.      The government investigated seven different locations that were associated with defendant, including the address listed on defendant's California driver's license, his prior business address, his prior mailing address, and the address he provided in a January 2013 immigration petition.  Between June 2013 and October 2013, law enforcement conducted surveillance at these locations but were unable to locate defendant.

6.      Between June 2013 and May 2015, HSI agents and the United States Marshal's Service unsuccessfully attempted to locate the defendant at seven different addresses.

7.      During June and July 2013, defendant had a current driver's license with an address of 423 N. Harvard Boulevard, unit 4, Los Angeles.  Agents conducted surveillance at that location for several days, but did not see the defendant.

8.      During that same time period, an agent drove by the defendant's business, "Brown Pride Custom Auto Sounds on Main Street in Los Angeles looking for the defendant.  The business was no longer operating.

9.      Between June and October 2013, law enforcement database queries revealed a possible address for defendant at 1690 E. 90th Street, Los Angeles.  Subsequently it was determined that this address was for another individual with a similar name.

10.      Agents conducted surveillance of the defendant at 1312 North Citrus Avenue, Unit 2, Los Angeles, California on several occasions leading up to the takedown in July 2014.  This address associated with an acquaintance of the defendant.

11.      Another database query revealed that a possible relative of the defendant lived at 2031 South Dunsmuir Avenue, Unit 1, Los Angeles, California.  Agents also conducted surveillance at that address looking for the defendant.

1   . . . .

2        12.     Between July 2013 and October 2013, a query of another query of a law enforcement

3 database revealed a vehicle registered to the defendant was seen at 617 West 79th Street, Los

4 Angeles, California. Agents conducted surveillance at that address on several occasions without

5 locating the defendant. Subsequent to the takedown, agents spoke with an individual at that address

6 who told them that he had purchased the vehicle from the defendant several months earlier and he

7 had no knowledge of the defendant's whereabouts.

8        13.     On January 13, 2013, defendant filed an update to an immigration petition on behalf

9 of a relative. In the petition, defendant listed his address as 236 West 83rd Street, Los Angeles.

10 Databases, however, showed that "Juan Martinez" lived at that same address and the Department of

11 Water and Power listed "Luis Rivas" as the resident. The USMS also spoke to one of the

12 defendant's relatives, who confirmed that defendant did not live at that address, even though the

13 defendant claimed to on the immigration petition.

14        14.     On October 29, 2013, after three months of failed attempts at locating the defendant,

15 HSI transferred a warrant package to the USMS, the primary agency responsible for locating

16 fugitives. Prior to the defendant's eventual arrest on May 2015 the USMS made several efforts to

17 locate the defendant.

18        15.     In November 2013, USMS sent defendant's information to various Los Angeles

19 County Sheriff's Department ("LASD") deputies to determine defendant's current whereabouts, but

20 these attempts were unsuccessful. In 2014, USMS Deputy Craig McCluskey also attempted to

21 locate defendant through internet searches, such as Facebook.

22        16.     On May 7, 2015, defendant was located and arrested HSI dispatched notified agents

23 that the defendant was scheduled for a flight from LAX to El Salvador at 1:00 a.m. on May 7, 2015.

24 HSI agents responded to LAX and arrested the defendant. Defendant made his initial appearance on

25 the same day.

26        17.     On July 6, 2015, defendant filed a motion to dismiss the indictment for

27 post-indictment delay pursuant to the Sixth Amendment to the United States Constitution and Rule

28 48(b) of the Federal Rules of Criminal Procedure ("Rule 48(b)").

18. Prior to filing his motion to dismiss the indictment, defendant filed two stipulations to continue his trial. The motion followed after the denial of the defendant's second stipulation to continue the trial.

CONCLUSIONS OF LAW

1. The Sixth Amendment to the Constitution of the United States guarantees a defendant's right to a speedy trial in all criminal prosecutions. In United States v. Barker, the Supreme Court established a four-factor "balancing test, in which the conduct of both the prosecution and the defendant are weighed," when assessing whether a defendant's right to a speedy trial has been violated. 407 U.S. 514, 530 (1972). In determining whether a defendant's right to a speedy trial has been infringed, a court must assess (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. None of the four factors is either "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."

2. For speedy trial claims, the length of delay is measured from the time of the indictment to the time of the trial. United States v. Gregory, 322 F.3d 1157, 1160 (9th Cir. 2003). "The length of the delay is to some extent a triggering mechanism." Barker, 407 U.S. at 530. If the delay is sufficiently lengthy, then it warrants "inquiry into the other factors that go into the balance." Id.

3. Generally, a post-indictment delay of one year is "presumptively prejudicial." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (delay of more than one year generally presumptively prejudicial and sufficient to trigger Barker inquiry). On its face, the length of delay from indictment to the defendant's first appearance is approximately 23 months, which is sufficient to trigger further inquiry into the remaining three Barker factors. See United States v. Corona-Verbera, 509 F.3d 1105, 1114 (9th Cir. 2007) (holding that "nearly eight-year delay between indictment and arrest is presumptively prejudicial and sufficient to trigger inquiry into the other three factors").

4. The delay in this case was presumptively prejudicial.

-4-

1        5.     The second Barker factor that courts must consider is the reason for the delay, in

2  particular, whether the government or the defendant bears principal responsibility for the delay.  See

3  United States v. Sandoval, 990 F.2d 481, 483-85 (9th Cir. 1993).  In this case, the Court finds that

4  the defendant, and not the government, bears the principal responsibility for the delay.

5        6.     After filing the indictment, the government took diligent steps to locate the defendant

6  by attempting to locate him at seven different addresses and by placing the defendant's warrant into

7  the NCIC database where other federal, state, or local law enforcement agencies would see it if they

8  encountered defendant.

9        7.     In addition, there is no evidence that the defendant contacted the government at any

10  time prior to his arrest.

11        8.     In this case, the government indicted several targets of defendant's gang, and actively

12  pursued the defendant, given the nature of the offense, coupled with the time and resources required

13  for preparing and prosecuting related eight indictments, the Court finds that government was

14  diligent during the 23 months between the indictment and the defendant's arrest.  Further, a firm

15  location for defendant was lacking.

16        9.     Defendant relies on Doggett and United States v. Mendoza, 530 F.3d 758 (9th Cir.

17  2008) to assert that there was no justifiable reason for delay.  First, Doggett does not define the duty

18  of care the government owes.  505 U.S. at 652-53.  Where the government has been diligent, the

19  government need not undertake heroic efforts to apprehend a defendant who is purposefully

20  avoiding apprehension. Sandoval, 990 F.2d 481 (9th Cir. 1993).

21        10.    Second, in Mendoza, defendant presented evidence that the government had the

22  contact information for his family members in the Philippines.  The record in Mendoza was silent as

23  to any efforts by the government to apprehend beyond entering the arrest warrant in the law

24  enforcement database.  Here, however, the government pursued the contact information it had for

25  the defendant.

26        11.    Here the defendant's only asserted his speedy trial rights after two stipulations to

27  continue the trial were filed by the defendant.  This factor is not in the defendant's favor.  The

28

1  defendant has submitted no evidence that he did not know that there was outstanding warrant for his

2  arrest or that the authorities were looking for him.

3       12.    Actual prejudice is typically demonstrated in three ways: "oppressive pretrial

4  incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense

5  will be impaired." Gregory, (citing Doggett, 505 U.S. at 654). The prejudice with which we are

6  concerned is prejudice caused by the delay that triggered the Barker inquiry, not simply any

7  prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself. Id.

8  at 1163.

9       13.    The degree of prejudice that a defendant must show is viewed on a sliding scale

10  based on the government's diligence in pursuing him. If the government has pursued a fugitive

11  defendant "with reasonable diligence from his indictment to his arrest, [then] his speedy claim

12  would fail" absent a showing of actual prejudice. Corona-Verbera, 509 F.3d at 1116 (quoting

13  Doggett, 505 U.S. at 656). By the same token, a defendant who bears responsibility for the delay is

14  not entitled to a presumption of prejudice and, instead, "carries a heavy burden of demonstrating

15  actual prejudice to succeed on a speedy trial claim." United States v. Sutcliffe, 505 F.3d 944, 957

16  (9th Cir. 2007) (citation omitted). But where the government has been negligent in those efforts, the

17  weight assigned to a defendant's presumption of prejudice increases depending on the length of the

18  delay caused by the government's negligence. See Doggett, 505 U.S. at 657. Thus, a court's

19  "toleration of such negligence varies inversely with its protractedness." Id. ("to warrant granting

20  relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than

21  negligence demonstrably causing such prejudice").

22       14.    Because the Court finds that the government was diligent and that defendant bore the

23  responsibility for the delay, there is no presumption of prejudice. Moreover, the defendant has

24  failed to carry his "heavy burden" of showing actual prejudice. See Corona-Verbera, 509 F.3d at

25  1113, 1116 ("generalized speculations" insufficient where defendant offered neither "affidavits nor

26  any non-speculative proof as to how he was prejudiced" by delay). In short, defendant has not

27  alleged with particularity how the delay impairs his case other than to suggest that he has lost the

28  ability to question government agent witnesses.

15.     As the Supreme Court has recognized, albeit in the pre-indictment delay context, "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." United States v. Marion, 404 U.S. 307, 322 (1971).  Statutes of limitations "provide predictability by specifying a limit beyond which there is an irrebutable presumption that a defendant's right to a fair trial would be prejudiced." Id. Here, defendant was charged with distributing controlled substances well within the statute of limitations and made his first appearance on those charges 23 months later.  Rule 48(b) of the Federal Rules of Criminal Procedure allows a court to dismiss an indictment if unnecessary delay occurs in bringing a defendant to trial where there is a showing of prejudice.  Fed. R. Crim. P. 48.  But, here there has been no showing of actual prejudice.  See United States v. Casas, 356 F.3d 104, 112-13 (1st Cir. 2004) (delay of over five years from indictment to arraignment did not violate defendant's speedy trial rights or Rule 48 where the government did not know the defendant's location during that period, no prejudice was shown, and the prosecution acted quickly once it discovered the defendant's whereabouts).

16.     Defendant argues that the delay resulted in the potential diminution of memory, the loss of contact with potential witnesses, and the likely loss and destruction of evidence. But the mere "possibility of prejudice is not sufficient to support" a defendant's allegation that his speedy trial rights were violated.  See United States v. Loud Hawk, 474 U.S. 302, 315 (1986).  Defendant does not identify or describe who his potential witnesses would have been, or provide any specific, non-speculative evidence about what these potential witnesses would have remembered.  In other words, defendant failed to show that these allegedly unavailable witnesses would otherwise have provided information helpful to his defense.  Similarly, defendant fails to cite to any specific evidence that has actually been lost, let alone demonstrate how the loss of this unidentified evidence prejudiced his case.  Again, under Ninth Circuit precedent, such "[g]eneralized assertions of [] the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995); see also Valentine, 783 F.2d at 1417 (offering bare allegations that potential injuries have actually been suffered is "speculative and insufficient to establish a denial of due process").

17.     The government diligently and continuously searched for defendant, even though he had changed jobs and residences, and submitted immigration documents with a false address. The 23-month delay between the filing of the indictment and defendant's initial appearance therefore was not, as defendant suggests, the result of any negligence on the government's part. Moreover, defendant must demonstrate that he suffered prejudice as a result of the post-indictment delay.  Indeed, defendant does not cite any specific evidence that has been lost or even impacted by the post-indictment delay in this case.  Far from actual prejudice, the prejudice cited by the defendant is speculative.  The defendant has not shown actual prejudice associated with the delay. Moreover, once HSI determined where defendant was located, HSI acted expeditiously to locate and arrest him.

18.     The delay between the filing of the sealed indictment and defendant's initial appearance was 23 months. Although the length of the delay approaches two years here, the Barker factors do not justify dismissal.  The court finds that despite the delay in locating the defendant, the defendant is not entitled to dismissal of indictment because he has not shown prejudice.  Accordingly, the motion is denied.

IT IS SO ORDERED.

DATED:  April 14, 2016

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE

-8-